IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert B. Stanford III,<br><br>                    Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>                    Respondents. | No. CV-14-00175-PHX-JAT (ESW)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES SENIOR DISTRICT JUDGE:**

Pending before the Court is Robert B. Stanford III's ("Petitioner") amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (the "Petition") that was filed on April 14, 2014 (Doc. 15). On May 27, 2014, Respondents filed their Answer (Doc. 16). Petitioner did not file a reply. The matter is deemed ripe for consideration.[1]

The Petition contains one ground for relief, which alleges the ineffective assistance of Petitioner's trial counsel. Petitioner argues that his trial counsel was deficient in failing to present alleged eye-witness testimony at Petitioner's trial and that such failure prejudiced Petitioner. The Petition is timely, and Petitioner's claim is not procedurally barred. The undersigned, however, finds that the claim is meritless. The

---

[1] The case was reassigned to U.S. Magistrate Judge Eileen S. Willett on November 14, 2014.

undersigned further finds that Petitioner is not entitled to the evidentiary hearing requested by Petitioner.[2] It is therefore recommended that the Court deny Petitioner's request for an evidentiary hearing and deny the Petition.

## I.  BACKGROUND

Petitioner is currently incarcerated at the Arizona State Prison Complex in Florence, Arizona. Petitioner is serving 18 years for a second degree murder conviction.

### A.  Facts Underlying Petitioner's Convictions

Petitioner's convictions arise out of an altercation that occurred outside the Redfish Grill and Bar in Chandler, Arizona. The Arizona Court of Appeals recounted the events as follows:

> On August 6, 2007, [Petitioner] was asked to leave the Redfish Grill and Bar ("Redfish") because he was arguing with a bar patron. As the head bouncer escorted [Petitioner] to his car, they crossed paths with Victim in the parking lot. [Petitioner] and Victim made eye contact, and then [Petitioner] asked him "what the f*** he was looking at." Victim reacted to [Petitioner] by yelling that [Petitioner] did not know who he was. [Petitioner] and Victim continued yelling and tried to fight one another but were separated by other bouncers. The yelling continued across the parking lot as the head bouncer escorted [Petitioner] away from Victim and to his car. Once at the car, [Petitioner] told the head bouncer that 'he's got something for [Victim] in the car, that he'll take care of it.' [Petitioner] then got into the car, apologized to the bouncer for the situation, said he was leaving for the night, and drove off.
>
> A few minutes after [Petitioner] drove off, the bouncer monitoring the patio saw [Petitioner's] car return to the parking lot. [Petitioner] was driving and began circling the parking lot in the same direction about five or six times. About ten to fifteen minutes after [Petitioner] left, the head

---

[2] In the Petition, Petitioner also requests the State of Arizona to transfer its files regarding Petitioner's criminal case (Doc. 15 at 19). On May 27, 2014, Respondents attached the relevant State of Arizona records to its Response (Doc. 16). Petitioner did not file a reply or notice with the Court objecting to the completeness of the records attached. The undersigned finds that the records attached to the Response (Doc. 16) are sufficient for evaluating the merits of Petitioner's IAC claim. The undersigned therefore deems Petitioner's request moot.

bouncer saw Victim inside the restaurant. Although Victim was acting fine, was not arguing with anyone, and was not as upset as he had been in the parking lot, the head bouncer escorted him out of the restaurant because it was standard procedure for anyone involved in a confrontation to be escorted out of the restaurant. Victim was initially upset that he was asked to leave but was calm as another bouncer escorted him to his car. That bouncer then returned to the front of the restaurant with the head bouncer. Less than a minute later, they heard gunshots, and then Victim came around the corner of the restaurant and collapsed in front of them. Victim had been shot . . . . Victim died from internal bleeding because the bullet hit his lungs.

    Officers from the Chandler Police Department quickly arrived at the crime scene. Officers could not find anyone who witnessed the shooting but found two .45 caliber shell casings, a bullet hole in a nearby restaurant, and a bullet hole in Victim's car. Police determined the shooter used a .45 caliber gun.

    The investigation led police to [Petitioner]. Police searched [Petitioner's] apartment and found a receipt for a .45 caliber gun and .45 caliber ammunition. During a police interview with the case agent, [Petitioner] initially lied and said he was not involved with the shooting at the Redfish. Later in the interview, however, [Petitioner] confessed to shooting Victim with a .45 caliber gun but claimed it was self-defense. According to [Petitioner], the following occurred. First, Victim hit him while the head bouncer was escorting him to his car. When [Petitioner] was in his car, Victim then jumped on the hood, hit him in the head through the window, leaned into the car, and tried to grab [Petitioner's] gun, which was on his lap. [Petitioner] was scared that the Victim was going to kill him, so he pulled the trigger three times and drove away, not knowing whether or not he shot Victim. [Petitioner] then disposed of the gun and went home.

(Ex. M at 2-5; Doc. 16-1 at 56-59).[3]

---

[3] Citations to pages within exhibits to Respondents' Answer (Doc. 16) are referred to by exhibit number and also by the page numbers assigned by the Clerk of Court when filed on July 14, 2014. For example, Exhibit A to Respondents' Answer is filed as Document 16-1. A citation to a page within Exhibit A would appear as (Ex. A at __; Doc. 16-1 at __).

### B. Direct Appeal, State Post-Conviction Relief, and Petitions for Review

On August 17, 2007, the Maricopa County Grand Jury indicted Petitioner for one count of second degree murder. (Ex. A at 1-2; Doc. 16-1 at 2-3). Petitioner's six-day trial began on December 1, 2008. (Ex. B; Doc. 16-1 at 6). On December 9, 2008, the jury found Petitioner guilty as charged. (Ex. B; Doc. 16-1 at 30). The trial court thereafter sentenced Petitioner to 18 years in prison. (Ex. J; Doc. 16-1 at 36).

Following his 2009 conviction, Petitioner appealed to the Arizona Court of Appeals. (Ex. K; Doc. 16-1 at 40). In its May 25, 2010 decision, the Arizona Court of Appeals affirmed Petitioner's conviction and sentence. (Ex M; Doc. 16-1 at 55). Petitioner did not file a petition for review in the Arizona Supreme Court.

On March 19, 2010, Petitioner filed a notice of post-conviction relief ("PCR"). (Ex N; Doc. 16-1 at 66). In his May 6, 2011 PCR petition, Petitioner raised three claims, which alleged that Petitioner's trial counsel was ineffective for failing to: (i) call alleged eye-witness Shiekh Ajamu ("Ajamu") at trial; (ii) raise the issue of the victim's aggressive nature and criminal background; and (iii) test Petitioner's driver side window frame for the victim's DNA. (Ex. O; Doc. 16-1 at 73-84). Attached to the PCR petition is an affidavit from Ajamu, which states that the victim jumped onto Petitioner's vehicle in an aggressive manner, then leaned into the vehicle and began fighting with Petitioner. (Ex. O, Attachment A; Doc. 16-1 at 97-98). Ajamu further states that after Petitioner and the victim tugged back and forth on Petitioner's gun, the gun discharged several times. In addition, Ajamu asserts that he contacted Petitioner's trial counsel at least two times to explain what Ajamu witnessed, but trial counsel did not take Ajamu's statement or interview him. Finally, Ajamu averred that if he had been called as a trial witness, he would have testified to the statements made in his affidavit. (*Id.*).

On September 8, 2011, the trial court dismissed the PCR petition. (Ex. R; Doc. 16-1 at 182). The court found that Petitioner had failed to state a colorable claim of ineffective assistance of counsel ("IAC"). (Ex. R; Doc. 16-1 at 179).

Petitioner filed a petition for review in the Arizona Court of Appeals on October 6,

2011. (Ex. S; Doc. 16-2 at 2). On August 17, 2012, the Arizona Court of Appeals denied relief after finding that Petitioner had failed to establish his IAC claim. (Ex. T; Doc. 16-2 at 87). Petitioner filed a petition for further review in the Arizona Supreme Court, which the Arizona Supreme Court denied on February 15, 2013. (Ex. V; Doc. 16-2 at 121).

On January 30, 2014, Petitioner timely filed a Petition for Writ of Habeas Corpus (Doc. 1). On April 14, 2014, with the Court's permission, an amended Petition was filed (Doc. 15).

## II.  FEDERAL HABEAS LAW

In reviewing the merits of a habeas petitioner's claims, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires federal courts to defer to the last reasoned state court decision. *Woods v. Sinclair*, 764 F.3d 1109, 1120 (9th Cir. 2014); *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013). To be entitled to relief, a state prisoner must show that the state court's adjudication of his or her claims either:

> 1. [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2010); *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

As to the first entitlement to relief explained above, "clearly established federal law" refers to the holdings of the U.S. Supreme Court's decisions applicable at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). A state court decision is "contrary to" such clearly established federal law if the state court (i) "applies a rule that contradicts the governing law set forth in [U.S. Supreme Court] cases" or (ii) "confronts a set of facts that are materially indistinguishable from a decision of the [U.S. Supreme Court] and

nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

As to the second entitlement to relief explained above, factual determinations by state courts are presumed correct unless the petitioner can show by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). That is, a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Richter*, 562 U.S. at 101; *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### III. ANALYSIS OF THE PETITION

#### A. Petitioner's Request for an Evidentiary Hearing

AEDPA imposes "an express limitation on the power of a federal court to grant an evidentiary hearing and [has] reduced considerably the degree of the district court's discretion." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999) (internal quotation marks and citation omitted). 28 U.S.C. § 2254(e)(2) provides that if a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings," no evidentiary hearing on the claim will be held in federal court unless the petitioner shows that:

> **(A)** the claim relies on:
> > **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (bold in original).

Case law has clarified that review under Section 2254(d) is limited to the record

that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* --- U.S. ----, 131 S.Ct. 1388, 1398 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); *Gulbrandson v. Ryan*, 738 F.3d 976, 994 n.6 (9th Cir. 2013) (stating that *Pinholster* and the statutory text make clear that limitation on evidentiary hearings applies to Section 2254(d)(2) claims as well). In *Gulbrandson*, the Ninth Circuit Court of Appeals held that a U.S. District Court did not abuse its discretion in denying a habeas petitioner's request for an evidentiary hearing regarding the petitioner's IAC claims. The Court explained that "the state court's rejections of these claims were neither contrary to, nor involved unreasonable applications, of *Strickland*. Thus, *Pinholster* bars a habeas court from any further factual development on these claims." *Gulbrandson*, 738 F.3d at 994; *see also Stokley v. Ryan*, 659 F.3d 802, 807 (9th Cir. 2011) (finding that a habeas petitioner was not entitled to an evidentiary hearing as the petitioner failed to present a colorable IAC claim).

As explained below, the Arizona state court's denial of Petitioner's IAC claim was not contrary to or an unreasonable application of clearly established federal law. Under *Pinholster*, *Gulbrandson*, and *Stokley*, Petitioner is therefore not entitled to an evidentiary hearing.

**B. Proving IAC Under *Strickland v. Washington*, 466 U.S. 668 (1984)**

Respondents do not argue, and the undersigned does not find, that Petitioner's claims are untimely or procedurally barred. The undersigned will thus evaluate the merits of Petitioner's claims. The "clearly established federal law" for an IAC claim is the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, a petitioner arguing an IAC claim must establish that his or her counsel's performance was (i) objectively deficient and (ii) prejudiced the petitioner. *Strickland*, 466 U.S. at 687. This is a deferential standard, and "[s]urmounting *Strickland's* high bar is never an easy task." *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). In the habeas context,

the issue is whether there is a "reasonable argument that counsel satisfied *Strickland's* deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*. Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal quotation marks and citation omitted).

In assessing the performance factor of *Strickland's* two-part test, judicial review "must be highly deferential" and the court must try not "to second-guess counsel's assistance after conviction." *Clark*, 769 F.3d at 725 (internal quotation marks and citation omitted). To be constitutionally deficient, counsel's representation must fall below an objective standard of reasonableness such that it was outside the range of competence demanded of attorneys in criminal cases. *Id.* A reviewing court considers "whether there is any reasonable argument" that counsel was effective. *Rogovich v. Ryan*, 694 F.3d 1094, 1105 (9th Cir. 2012).

To establish the prejudice factor of *Strickland's* two-part test, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In other words, it must be shown that the "likelihood of a different result [is] substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Although the performance factor is listed first in *Strickland's* two-part test, a court may consider the prejudice factor first. In addition, a court need not consider both factors if the court determines that a petitioner has failed to meet one factor. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both deficiency and prejudice if the habeas petitioner cannot establish one or the other).

**C. Alleged IAC for Failure to Call Sheikh Ajamu as a Trial Witness**

In his alleged ground for habeas relief, Petitioner asserts that:

> Trial counsel provided ineffective assistance of counsel by failing to find, interview, and call as a witness at trial the only eye-witness to the shooting which the State of Arizona charged Petitioner with second-degree murder when that eye-witness's testimony would have supported Petitioner's claim of self-defense.

(Doc. 15 at 12).

The last state court decision reviewing the above claim is the August 17, 2012 Arizona Court of Appeals ruling that affirmed the trial court's denial of Petitioner's PCR petition. Citing to *Strickland*, the Court of Appeals explained that "we agree with the [trial] court that [Petitioner] has failed to overcome the presumption 'that counsel's conduct falls within the wide range of reasonable professional assistance' that 'might be considered sound trial strategy.'" (Ex. S, Attachment A; Doc. 16-2 at 116-17). As the Arizona Court of Appeals adopted the trial court's reasoning, the U.S. District Court may review the trial court's decision as part of the review of the Arizona Court of Appeals' decision. *Amado v. Gonzalez*, 758 F.3d 1119, 1130 (9th Cir. 2014) (explaining that when the last reasoned decision is a state appellate court decision which adopts or substantially incorporates lower state court decisions, the lower state court decisions may be reviewed as part of the review of the state appellate court's decision). For the following reasons, Petitioner's IAC claim is meritless as the state court's rejection of Petitioner's IAC claim was not an unreasonable application of *Strickland*.

### 1. Trial Counsel's Performance was Not Deficient

The record indicates that Petitioner's trial counsel did speak with alleged eye-witness Ajamu. In a July 7, 2010 email to Petitioner's current counsel, Petitioner's trial counsel stated that:

> Mr. Sheikh Ajamu . . . made contact with me on at least three occasions. He called my office and appeared at court at [Petitioner's] hearings on a couple of occasions. He asked me what [Petitioner] was facing in terms of years in prison. I remember him asking me what he could face and I told him he needed to talk to a lawyer because I couldn't give him legal advice. I notified the prosecutor and the state's case agent detective [Ajamu] was a possible witness in the case

>and had made phone contact with me . . . . He at first indicated he wanted to be a witness for [Petitioner] if he could just give a statement to me. I told him he would be subject to interview by the prosecutor. [Ajamu] eventually just faded away. **In my contacts with [Ajamu] he did not give me information that was exculpatory for [Petitioner].** I lost interest in having [Petitioner] as a witness as he figured out if he put himself in the car at the time of the shooting he could implicate himself. **In our conversations [Ajamu's] account of what happened did not match [Petitioner's] story.**

(Ex. O, Attachment B; Doc. 16-1 at 100-01) (emphasis added).

While Petitioner does not dispute trial counsel's statements regarding trial counsel's conversations with Ajamu, Petitioner contends that "[a]t a minimum, defense counsel should have conducted a thorough interview of Ajamu. Had he done so, then he would have discovered that Ajamu's recollection of the shooting actually matched Petitioner's version of the shooting that he testified to at trial." Yet as correctly noted by the trial court, the "relevant inquiry is not what trial counsel may have chosen to do based on Mr. Ajamu's present testimony, but on what he reasonably believed that testimony would be in 2008 when this matter was being prepared for trial." (Ex. R at 2; Doc. 16-1 at 179). A reviewing court "must make every effort to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

If the conversations trial counsel had with Ajamu did not indicate that Ajamu's testimony would benefit Petitioner's defense, then it was reasonable for trial counsel to choose not to pursue a formal interview. *Gulbrandson*, 738 F.3d at 988 (the "presumption of reasonableness means that not only do we 'give the attorneys the benefit of the doubt,' we must also 'affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did.'" (quoting *Pinholster*, 131 S.Ct. at 1407) (alteration in original)). An attorney "need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Richter*, 131 S.Ct. at 787. Another email from Petitioner's trial counsel to Petitioner's current counsel confirms that the decision not to pursue Ajamu as a defense witness was strategic:

> I didn't think [Ajamu's] testimony would help, in fact I **thought it would hurt** . . . . Please keep in mind **[Petitioner's] story to me about how the shooting took place changed frequently**. That was our main problem at trial, the police had several different versions of how this happened from [Petitioner] and they just played each different version at trial.

(Ex. O, Attachment B; Doc. 16-1 at 100) (emphasis added).

Although Petitioner disagrees with trial counsel's strategy, that disagreement does not constitute deficient performance on the part of Petitioner's trial counsel. *See Murray*, 746 F.3d at 457 (a "defendant's disagreement with trial counsel's strategy does not constitute deficient performance on the part of trial counsel"). Petitioner has failed to show how trial counsel's performance fell below a standard of reasonableness under prevailing professional norms. *Clark*, 769 F.3d at 725. Petitioner therefore does not meet the performance prong of the *Strickland* test. Even if Petitioner did meet the performance prong, Petitioner has failed to establish the prejudice prong of the *Strickland* test, as discussed below.

### 2. Petitioner has Failed to Establish Prejudice

In an effort to establish that the failure to call Ajamu as a trial witness prejudiced Petitioner, Petitioner relies on questions posed by the jurors, such as "Why have we not heard testimony from [Ajamu]?" Petitioner asserts that the jury's questions "eradicate any doubt as to Mr. Ajamu's significance in their determination of guilt in this case." (Doc. 15 at 17-18). Yet the jury's curiosity about why Ajamu did not testify does not mean that the jury would have believed Ajamu's testimony or given it significant weight. In light of Petitioner's own conflicting stories to the police about what happened and other evidence presented by the State, a reasonable juror may have likely doubted the testimony of Ajamu.

For example, a police detective testified that Petitioner told "so many different stories about the gun, that he can't own one, and then he did, and that he gave it away, and that he threw it away . . . ." (Ex. Y at 63; Doc. 16-3 at 173). The detective further

testified that the physical evidence did not corroborate Petitioner's version of the events. After conducting a reenactment, the detective concluded that if the events happened as Petitioner alleged, shell casings from the gun would have landed inside the vehicle. (Ex. Y at 66; Doc. 16-3 at 176). Yet the shell casings were found in Redfish's parking lot, not inside Petitioner's vehicle. (Ex. Y at 65; Doc. 16-3 at 175). Petitioner's vehicle did not have visible damage and there was no blood or firearms evidence inside the car. (Ex. Y at 62; Doc. 16-3 at 172).

In addition, a forensic pathologist testified at Petitioner's trial that powder burns were not found on the victim's hands, which would be reasonably expected if the victim had been holding onto the barrel of the gun as Petitioner alleged. (Ex. Z at 34; Doc. 16-4 at 35). In addition, gun powder particles were not found on the victim's shirt and the shirt was not torn or singed, which could occur if the victim had been touching the gun barrel or had been within a few inches of the barrel when it was fired. (Ex. Z at 49-51; Doc. 16-4 at 50-52). Given all of the evidence presented by the State, Petitioner has failed to establish that there is a "substantial, not just conceivable" likelihood of a different result if the jury had heard the testimony of Ajamu. *See Richter*, 562 U.S. at 112. Petitioner has thus failed to establish the prejudice prong of *Strickland*.

Accordingly, the undersigned concludes that it was not contrary to, nor an unreasonable application of, *Strickland* for the Arizona state court to reject Petitioner's IAC claim contained in the Petition. The undersigned therefore recommends that the Court deny the claim on the merits.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that the Court deny Petitioner's request for an evidentiary hearing. The undersigned further recommends that the Court deny and dismiss the Petition (Doc. 1) with prejudice.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's request for an evidentiary hearing be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because Petitioner has not made a substantial showing of the denial of a constitutional right in his claim for relief.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 24th day of March, 2015.

_____
Eileen S. Willett
United States Magistrate Judge