IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert B. Stanford,<br>                Petitioner,<br>v.<br>Charles L. Ryan, et al.,<br>                Respondents. | No. CV-14-00175-PHX-JAT<br>**ORDER** |

Pending before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 18), recommending that Petitioner's Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody (Non-Death Penalty) be denied, and that the Court decline to issue a certificate of appealability.

**I.  BACKGROUND**

    **A.  Factual Background**

Petitioner is serving an eighteen year sentence in the Arizona State Prison Complex in Florence, Arizona for a second degree murder conviction. Petitioner's convictions arise out of an altercation that occurred outside the Redfish Grill and Bar in Chandler, Arizona. The Arizona Court of Appeals recounted the events as follows:

> On August 6, 2007, [Petitioner] was asked to leave the Redfish Grill and Bar ("Redfish") because he was arguing with a bar patron. As the head bouncer escorted [Petitioner] to his car, they crossed paths with Victim in the parking lot. [Petitioner] and Victim made eye contact, and then

> [Petitioner] asked him "what the f*** he was looking at." Victim reacted to [Petitioner] by yelling that [Petitioner] did not know who he was. [Petitioner] and Victim continued yelling and tried to fight one another but were separated by other bouncers. The yelling continued across the parking lot as the head bouncer escorted [Petitioner] away from Victim and to his car. Once at the car, [Petitioner] told the head bouncer that 'he's got something for [Victim] in the car, that he'll take care of it.' [Petitioner] then got into the car, apologized to the bouncer for the situation, said he was leaving for the night, and drove off.
>
> A few minutes after [Petitioner] drove off, the bouncer monitoring the patio saw [Petitioner's] car return to the parking lot. [Petitioner] was driving and began circling the parking lot in the same direction about five or six times. About ten to fifteen minutes after [Petitioner] left, the headbouncer saw Victim inside the restaurant. Although Victim was acting fine, was not arguing with anyone, and was not as upset as he had been in the parking lot, the head bouncer escorted him out of the restaurant because it was standard procedure for anyone involved in a confrontation to be escorted out of the restaurant. Victim was initially upset that he was asked to leave but was calm as another bouncer escorted him to his car. That bouncer then returned to the front of the restaurant with the head bouncer. Less than a minute later, they heard gunshots, and then Victim came around the corner of the restaurant and collapsed in front of them. Victim had been shot . . . . Victim died from internal bleeding because the bullet hit his lungs.
>
> Officers from the Chandler Police Department quickly arrived at the crime scene. Officers could not find anyone who witnessed the shooting but found two .45 caliber shell casings, a bullet hole in a nearby restaurant, and a bullet hole in Victim's car. Police determined the shooter used a .45 caliber gun.
>
> The investigation led police to [Petitioner]. Police searched [Petitioner's] apartment and found a receipt for a .45 caliber gun and .45 caliber ammunition. During a police interview with the case agent, [Petitioner] initially lied and said he was not involved with the shooting at the Redfish. Later in the interview, however, [Petitioner] confessed to shooting Victim with a .45 caliber gun but claimed it was self-defense. According to [Petitioner], the following occurred. First, Victim hit him while the head bouncer was escorting him to his car. When [Petitioner] was in his car, Victim then jumped on the hood, hit him in the head through the window, leaned into the car, and tried to grab [Petitioner's] gun, which was on his lap. [Petitioner] was scared that the Victim was going to kill him, so he pulled the trigger three times and drove away, not knowing whether or not he shot Victim. [Petitioner] then disposed of the gun and went home.

(Doc. 18 at 2–3) (quoting Doc. 16-1 at 56–59).

### B. Procedural History

The Magistrate Judge correctly recited the procedural history of this case as follows:

> On August 17, 2007, the Maricopa County Grand Jury indicted

- 2 -

Petitioner for one count of second degree murder. (Ex. A at 1-2; Doc. 16-1 at 2–3). Petitioner's six-day trial began on December 1, 2008. (Ex. B; Doc. 16-1 at 6). On December 9, 2008, the jury found Petitioner guilty as charged. (Ex. B; Doc. 16-1 at 30). The trial court thereafter sentenced Petitioner to 18 years in prison. (Ex. J; Doc. 16-1 at 36).

Following his 2009 conviction, Petitioner appealed to the Arizona Court of Appeals. (Ex. K; Doc. 16-1 at 40). In its May 25, 2010 decision, the Arizona Court of Appeals affirmed Petitioner's conviction and sentence. (Ex M; Doc. 16-1 at 55). Petitioner did not file a petition for review in the Arizona Supreme Court.

On March 19, 2010, Petitioner filed a notice of post-conviction relief ("PCR"). (Ex N; Doc. 16-1 at 66). In his May 6, 2011 PCR petition, Petitioner raised three claims, which alleged that Petitioner's trial counsel was ineffective for failing to: (i) call alleged eye-witness Shiekh Ajamu ("Ajamu") at trial; (ii) raise the issue of the victim's aggressive nature and criminal background; and (iii) test Petitioner's driver side window frame for the victim's DNA. (Ex. O; Doc. 16-1 at 73-84). Attached to the PCR petition is an affidavit from Ajamu, which states that the victim jumped onto Petitioner's vehicle in an aggressive manner, then leaned into the vehicle and began fighting with Petitioner. (Ex. O, Attachment A; Doc. 16-1 at 97-98). Ajamu further states that after Petitioner and the victim tugged back and forth on Petitioner's gun, the gun discharged several times. In addition, Ajamu asserts that he contacted Petitioner's trial counsel at least two times to explain what Ajamu witnessed, but trial counsel did not take Ajamu's statement or interview him. Finally, Ajamu averred that if he had been called as a trial witness, he would have testified to the statements made in his affidavit. (*Id.*).

On September 8, 2011, the trial court dismissed the PCR petition. (Ex. R; Doc. 16-1 at 182). The court found that Petitioner had failed to state a colorable claim of ineffective assistance of counsel ("IAC"). (Ex. R; Doc. 16-1 at 179).

Petitioner filed a petition for review in the Arizona Court of Appeals on October 6, 2011. (Ex. S; Doc. 16-2 at 2). On August 17, 2012, the Arizona Court of Appeals denied relief after finding that Petitioner had failed to establish his IAC claim. (Ex. T; Doc. 16-2 at 87). Petitioner filed a petition for further review in the Arizona Supreme Court, which the Arizona Supreme Court denied on February 15, 2013. (Ex. V; Doc. 16-2 at 121).

On January 30, 2014, Petitioner timely filed a Petition for Writ of Habeas Corpus (Doc. 1). On April 14, 2014, with the Court's permission, an amended Petition was filed (Doc. 15).

(Doc. 18 at 4–5).

Petitioner summarizes the claims in his Amended Petition as follows: "Petitioner's Due Process rights were violated when his trial counsel provided ineffective assistance of counsel with respect to failing to find, interview, and call as a witness at trial the only

eye-witness to the shooting whose testimony would have supported and bolstered Petitioner's claim of self-defense." (Doc. 15 ¶ 11.2). Notably, the Amended Petition claims, and Defendant does not dispute, that at trial, "the jury asked to hear from the eye-witness [trial] counsel failed to call as a witness." (*Id.*).

On March 24, 2015, the Magistrate Judge assigned to this case issued her R&R, recommending that the Amended Petition be denied. (Doc. 20). Petitioner filed his objections to the R&R on April 7, 2015.

## II.     STANDARD OF REVIEW

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object."). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection."[1] *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the [report and recommendation] to which objection is made.").

The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is incarcerated based on a state conviction. With respect to the claims Petitioner exhausted before the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the Petition on those claims unless "a state court decision is contrary to, or involved an

---

[1] Petitioner's objections did not mention the Magistrate Judge's conclusion that an evidentiary hearing is not warranted. The Court therefore summarily accepts and adopts that portion of the R&R.

unreasonable application of, clearly established Federal law"[2] or was based on an unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Further, this Court must presume the correctness of the state court's factual findings regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998).

"When applying these standards, the federal court should review the 'last reasoned decision' by a state court . . . ." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

## III. DISCUSSION

Under *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny, "[a]n ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (internal citations and quotations omitted). The Court will address Petitioner's objections regarding each of these prongs separately.

### A. Performance

A deficient performance is one that is "outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, meaning that the petitioner must demonstrate that trial counsel's representation "fell below an objective standard of reasonableness," *Wiggins*, 539 U.S. at 521 (internal citations and quotations omitted). The Supreme Court has recognized that within this standard of reasonableness, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular

---

[2] Further, in applying "Federal law" the state courts only need to act in accordance with Supreme Court case law. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003)("In attempting to answer [whether the state court applied Federal law in an objectively reasonable manner], the only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams* [*v. Taylor*], 529 U.S. [362], 412 [(2000)]. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *See Williams*, 529 U.S. at 412 ("The ... statutory language makes clear ... that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.").

decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Hovey v. Ayers,* 458 F.3d 892, 909 (9th Cir. 2006) (quoting *Strickland*, 466 U.S. at 691). Indeed, "[j]udicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669. Trial counsel is not required to interview every possible witness to be effective. *See Bobby v. Van Hook*, 558 U.S. 4, 11 (2009).

Petitioner argues that regardless of what Ajamu initially told trial counsel, "there is no reasonable explanation for not interviewing Ajamu prior to trial." (Doc. 20 at 2). Citing Ajamu's post-trial affidavit, Petitioner claims that trial counsel should not have been satisfied with Ajamu's initial communications because (1) he was not under oath, (2) he "did not provide a full statement," and (3) he only spoke with trial counsel "to ascertain his own potential risk of prosecution." (Doc. 20 at 3). Thus, Petitioner argues that trial counsel should have investigated further to determine the real extent of Ajamu's testimony.

These arguments fail. Because a reviewing court must "eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 689, the Court may not look to Ajamu's affidavit, as Petitioner did, to determine why Ajamu initially approached trial counsel or whether he gave trial counsel "a full statement." (Doc. 20 at 2–3). Furthermore, Petitioner gives no authority for the proposition that trial counsel may not rely on a witness's unsworn statements when determining whether to conduct further investigation.

A brief review of the emails sent by trial counsel to current counsel demonstrates that, given the information he had at the time, trial counsel did not act unreasonably when he decided not to formally interview or call Ajamu as a witness. Trial counsel noted in these emails that Ajamu "did not give me information that was exculpatory for [Petitioner]," that "[i]n our conversations [Ajamu's] account of what happened did not

- 6 -

match [Petitioner's] story," and that because Petitioner's story had "changed frequently," adding Ajamu's story would not help, "in fact, I thought it would hurt" Petitioner's case. (Doc. 16-1 at 100–01). Given this information, the Court agrees with the Magistrate Judge's conclusion that "Petitioner has failed to show how trial counsel's performance fell below a standard of reasonableness under prevailing professional norms."[3] (Doc. 18 at 11) (citing *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014)).

### B. Prejudice

Even if Petitioner's performance was inadequate, Petitioner has failed to show prejudice. In order to show prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *accord Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable."). When analyzing the prejudice prong of the *Strickland* analysis, reviewing courts must consider the totality of the evidence and the strength of the government's case. *Alcala v. Woodford*, 334 F.3d 862, 872 (9th Cir. 2003); *see also Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

Petitioner first argues that "[t]he issue is not whether the jury would have believed Ajamu—that would be an impossible standard for Petitioner to meet—the issue is whether Ajamu should have been called as a witness." (*Id.*). This argument ignores *Strickland*'s prejudice prong altogether. It is well-established that in addition to showing an error by trial counsel, Petitioner must also show that, were it not for the error, there would have been a substantial chance that the outcome would have been different. *Richter*, 562 U.S. at 112. Therefore, it is not enough, as Petitioner suggests, that "Ajamu should have been called as a witness."

---

[3] If Petitioner claims that not formally interviewing the only third party witnesses to a shooting is a *per se* violation of professional standards, he has not cited any authority for this proposition. In the absence of such authority, the Court declines to adopt such a broad declaration of a trial lawyer's duty.

- 7 -

Next, Petitioner argues that prejudice is evident from "the jury's multiple requests and inquiries regarding why they did not hear from Ajamu." (Doc. 20 at 3). The Court agrees that these requests indicate the jury likely drew a negative inference from Ajamu's failure to testify. The requests alone, however, do nothing to prove how the jury would have viewed Ajamu's testimony had he testified.

Indeed, given the strength of the government's evidence, it is unlikely that the jury would have changed its verdict if Ajamu would have testified. As the Magistrate Judge correctly pointed out, the government presented convincing objective evidence that contradicted Petitioner's theory of the case:

> For example, a police detective . . . . testified that the physical evidence did not corroborate Petitioner's version of the events. After conducting a reenactment, the detective concluded that if the events happened as Petitioner alleged, shell casings from the gun would have landed inside the vehicle. (Ex. Y at 66; Doc. 16-3 at 176). Yet the shell casings were found in Redfish's parking lot, not inside Petitioner's vehicle. (Ex. Y at 65; Doc. 16-3 at 175). Petitioner's vehicle did not have visible damage and there was no blood or firearms evidence inside the car. (Ex. Y at 62; Doc. 16-3 at 172).
>
> In addition, a forensic pathologist testified at Petitioner's trial that powder burns were not found on the victim's hands, which would be reasonably expected if the victim had been holding onto the barrel of the gun as Petitioner alleged. (Ex. Z at 34; Doc. 16-4 at 35). In addition, gun powder particles were not found on the victim's shirt and the shirt was not torn or singed, which could occur if the victim had been touching the gun barrel or had been within a few inches of the barrel when it was fired. (Ex. Z at 49-51; Doc. 16-4 at 50–52).

(Doc. 18 at 11–12).

Because Ajamu would have testified to the same version of events Petitioner presented at trial, his testimony would have been contradicted by the same objective evidence that discredited Petitioner's theory. Thus, even if Ajamu had testified, a jury would likely have discredited Ajamu's testimony, just as they rejected Petitioner's matching theory. It is, of course, *possible* that Ajamu's testimony could have convinced the jury to ignore the objective evidence and believe the Petitioner's story, but mere possibility cannot sustain a finding of prejudice. *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). Accordingly,

given the weight of the objective evidence offered by the government that contradicts Ajamu's account, Petitioner has failed to show that calling Ajamu's testimony would have changed the outcome of the trial.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 18) is **ACCEPTED AND ADOPTED**; the objections (Doc. 20) are overruled; the Amended Petition for Writ of Habeas Corpus (Doc. 15) is **DENIED** and the Clerk of the Court shall enter judgment of dismissal, with prejudice.

**IT IS FURTHER ORDERED** that pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

Dated this 21st day of July, 2015.

James A. Teilborg
Senior United States District Judge